FILED '09 JAN 15 16:07 USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

AARON AND KAYNATRICE WARD,
JOEY AND TINA RESMONDO, and
PAULINE LAMPKIN,

               Plaintiff,

      v.

LIME FINANCIAL SERVICES, LTD,

               Defendant.

CV. 08-840-AC

OPINION AND ORDER

ACOSTA, Magistrate Judge:

*Opinion and Order*

      Plaintiffs Aaron and Kaynatrice Ward ("the Wards"), Joey and Tina Resmondo ("the Resmondos"), and Pauline Lampkin ("Lampkin") (collectively "Plaintiffs") filed this action against

Page -1- OPINION AND ORDER                                         *{WEP}*

defendant Lime Financial Services, Ltd. ("Lime"), alleging violations of the Truth in Lending Act ("TILA").  Presently before the court is Lime's motion to transfer venue to the Southern District of Alabama and Plaintiffs' motion to amend.  Lime's motion to transfer venue is GRANTED because the balance of relevant factors weighs in favor of transfer to the Southern District of Alabama. Because the transfer motion is granted, Plaintiffs' motion to amend their complaint is DENIED as moot with leave to refile in the Southern District of Alabama.

*Background*

Plaintiffs, all residents of Alabama, bring this action against Lime, an Oregon corporation, alleging violations of TILA.  All of the Plaintiffs refinanced their home mortgages with Lime.  The Wards refinanced in 2005, Lampkin in 2006, and the Resmondos in 2007.  All of the mortgaged property is located in Alabama.  All of the loans were closed in Alabama by independent closing agents (the "Agents"), who were acting under a contract with Lime.  The Agents completed the necessary paperwork, including the Truth in Lending Forms, and the security interests in Plaintiffs' respective properties were recorded in Alabama.  In their complaint, Plaintiffs claim that the Agents left blank certain items on their Notice of Right to Cancel forms and that Lime understated the finance charge.    Plaintiffs' complaint is captioned "CLASS ACTION ALLEGATION COMPLAINT" and they allege to bring their claims "on behalf of a class" comprising a nationwide class of borrowers who allegedly received similar forms from Agents with regard to mortgages financed through Lime.

Plaintiffs are represented here by both Alabama and Oregon attorneys.  Plaintiffs' Alabama counsel recently brought similar TILA claims on behalf of different plaintiffs against a different defendant in a case in the Southern District of Alabama. *McMillian v. AMC Mortgage Services, Inc.,*

560 F. Supp. 2d 1210 (S.D. Ala.). In *McMillian*, the plaintiffs alleged a violation of TILA for failure

to fill in certain blanks for rescission deadlines on the Notice of Right to Cancel forms. *Id.* at 1217-

18. The Southern District of Alabama held that this did not violate TILA, stating that "[a]lthough

the Notice of Right to Cancel did not specify a date certain for cancellation, this Court is of the

opinion that no reasonably attentive consumer reading that Notice could have failed to appreciate

the existence and running of the three-day rescission period." *Id.* at 1219-20. The Southern District

of Alabama entered the *McMillian* decision on June 10, 2008. *Id.* at 1210. Plaintiffs' Oregon

counsel were not counsel of record in the *McMillian* case, and the record discloses no connection

between Plaintiffs' Oregon counsel and Plaintiffs beyond this particular case.

Plaintiffs filed this case in the District of Oregon on July 16, 2008, and Lime filed its motion

to transfer venue on September 29, 2008. On the same day they filed their opposition to Lime's

motion to transfer, Plaintiffs also filed a motion for leave to file a first amended complaint seeking

to add Daniel Terry ("Terry") as an additional plaintiff. Terry resides in Oregon and refinanced his

mortgage on property located in Oregon. The closing of Terry's mortgage occurred in Oregon.

### Legal Standard

Lime moves for a transfer of venue under 28 U.S.C. § 1404(a), which provides: "For the

convenience of the parties and witnesses, in the interest of justice, a district court may transfer any

civil action to any other district or division where it might have been brought." The purpose of §

1404(a) is to prevent waste of time, energy, and money, and to protect litigants, witnesses, and the

public against unnecessary inconvenience and expenses. *Van Dusen v. Barrack*, 376 U.S. 612, 616

(1964). Thus, to support transfer under § 1404(a), two findings must be made: (1) that the transferee

court is a district where the action might have been brought, and (2) that the convenience of the

parties and witnesses and the interests of justice favor transfer. *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir.), *cert denied*, 474 U.S. 1021 (1985).

The moving party bears the burden of proving that the action should be transferred. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979). This is a significant burden, as the moving party must show that the balance of convenience and justice factors "tip strongly" in favor of transfer to overcome the "substantial weight" accorded plaintiff's choice of forum. *Forte Capital Partners v. Harris Cramer*, No. 07-1237, 2007 WL 1430052, at *2 (N.D. Cal. May 14, 2007). *See also Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989)(moving party has the burden of showing that the transferee forum is "clearly more convenient"); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)(defendant must make a "strong showing of inconvenience" to overcome plaintiff's choice of forum.); *Kay v. National City Mortgage Co.*, 494 F. Supp. 2d 845, 850 (S.D. Ohio. 2007)(balance of convenience "should be strongly in favor of a transfer"). Showing that a transfer would "merely shift rather than eliminate the inconvenience" is not sufficient to meet this burden. *Decker Coal*, 805 F.2d at 843.

The moving party cannot meet this burden by presenting or relying on vague generalizations regarding the convenience factors. *Langford v. Ameritanz, Inc.*, No. F05-1271, 2006 WL 1328223, at *10 (E.D. Cal. May 13, 2006). Rather, the moving party must present affidavits or declarations to establish the facts supporting transfer that are not conclusory and not based on hearsay. *Forte Capital Partners*, 2007 WL 1430052, at *2, citing HON. WILLIAM W. SCHWARZER, et al., FEDERAL CIVIL PROCEDURE BEFORE TRIAL §§ 4:789 (2006). The moving party must identify the key witnesses to be called and present a generalized statement of what their testimony would include.

*Id.*, citing *Heller Financial*, 883 F.2d at 1293.

The decision to transfer is committed to the sound discretion of the trial judge. *Commodity Futures Trading*, 611 F.2d at 279. The weighing of factors for and against transfer involves "subtle considerations" and is best left to the discretion of the trial judge. *Paoa v. Marati*, No. 07-370, 2007 WL 4563938, at *3 (D. Puerto Rico Dec. 28, 2007), citing *Commodity Futures Trading*, 611 F.2d at 279. Determining motions for transfer involves an "individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000)(internal quotations omitted).

The factors a court must consider in deciding whether transfer is appropriate include:  (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the parties' respective contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).

*Discussion*

*1. Where the Action Might Have Been Brought.*

Lime concedes that venue is proper in the District of Oregon. However, Lime argues that venue also lies in the Southern District of Alabama. The Southern District of Alabama is a venue where the action "might have been brought," as contemplated by 28 U.S.C. § 1404(a). In a federal question case such as this, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2) (2006). In this case,

Page -5- OPINION AND ORDER                                              *{WEP}*

venue is proper in the Southern District of Alabama because the loans in question were entered into there and the property at issue is located there. Therefore, the Southern District of Alabama is a venue where the action might have been brought, and this statutory requirement is met.

2.  *The Transfer Factors.*

   a.  *Location where the relevant agreements were negotiated and executed.*

This factor weighs heavily in favor of transfer. The facts relevant to this factor are not disputed. Each of the three loans at issue here was closed within the jurisdictional boundaries of the federal Southern District of Alabama. The contracts were executed and the security interests were recorded within that district. These facts strongly support transfer.

   b.  *State that is most familiar with the governing law.*

This factor is neutral because the legal issues question here are based exclusively on TILA, a federal law. In such circumstances, both forums' courts are presumed to be equally familiar with and competent to adjudicate the law. *Kay v. National City Mortgage Co.*, 494 F. Supp. at 857. Therefore, this factor does not weigh in for or against transfer.

   c.  *Plaintiffs' choice of forum.*

This factor ultimately weighs in favor of transfer. First, the Plaintiffs are not Oregon residents and have chosen to file their case in a foreign forum rather than their home forum, which minimizes the deference accorded their forum choice. Second, they seek to bring their case as a class action, which also undermines the deference their choice otherwise might receive. Third, the record supports the conclusion that Plaintiffs' decision to file their case in Oregon stems from their desire to avoid the unfavorable precedent the *McMillian* case created for their TILA claim, which is contrary to the interest of justice prong of the statute.

First, a plaintiff's choice of forum is given greater deference when the plaintiff sues in his home forum, but little, if any, deference when the plaintiff files suit in a foreign forum. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981). As the Court stated in *Piper Aircraft*:

> When the home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable. Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference.

*Id.* As one court noted, "[a] plaintiff's choice, however, commands only minimal consideration if he does not reside in the district where he brought the suit, the operative facts have not occurred there and the forum has no particular interest in the parties or the subject matter." *Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.*, No. C03-3711, 2003 WL 22387598, at *3 (N.D. Cal. Oct. 14, 2003). *Accord Bryant v. ITT Corp.*, 48 F. Supp. 829, 832 (N.D. Ill. 1999)(where plaintiff's chosen forum is not the plaintiff's home forum, plaintiff's chosen forum is entitled to less deference); *PRG-Schultz USA, Inc. v. Gottschalks, Inc.*, No. C 05-2811, 2005 WL 2649206, at *4 (N.D. Cal. Oct. 17, 2005)(same). Here, Plaintiffs have not explained why or how litigating this case in the District of Oregon would be more convenient for them, Alabama residents. Because the assumption in favor of a plaintiff's choice of forum is motivated by considerations of convenience, this criterion does not, on the facts of this case, entitle Plaintiffs' choice of forum to much, if any, deference.

Second, Plaintiffs seek to bring this matter as a class action. "[W]hen an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). *Accord Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.*, No. C 03-3711, 2003 WL 22387598, at *3 (N.D. Cal. Oct. 14, 2003). *See also*

*Helfant v. Louisiana & Southern Life Ins. Co.*, 82 F.R.D. 53, 58 (D.C.N.Y. 1979)(in purported stockholder class action, "the existence of hundreds of potential plaintiffs considerably weakens plaintiff's claim that his home forum is the most appropriate"). Here, Plaintiffs seek to initiate a class action and have filed it in a forum that is not their home forum. For this additional reason, their choice of forum should receive little deference.

Third, a plaintiff's choice of forum is given less deference, and can even support transfer, where it appears to be motivated by forum shopping. *See Wireless Consumers Alliance*, 2003 WL 22387598, at *5. Here, by eschewing their home forum, Plaintiffs will not be faced with obstacle that the *McMillian* case poses to their TILA claims. The forum shopping factor falls within the "interest of justice" aspect of §1404(a), and courts have found that where the record discloses forum shopping, not only does it negate the preference accorded the plaintiff's choice of forum, it also weighs in favor of transfer. *See, e.g.*, *Wireless Consumers Alliance*, 2003 WL 22387598, at *5 (finding transfer appropriate in substantial part because the court was "convinced that plaintiff [was] attempting to forum shop" to evade adverse rulings in different district). Here, the record supports the conclusion that Plaintiffs filed in Oregon, a foreign forum, to avoid the unfavorable law on TILA that the *McMillian* case created in their home forum of Alabama. Thus, this factor weighs strongly in favor of transfer.

   *d. Parties' respective contacts with the forum.*

   This factor weighs in favor of transfer. Plaintiffs all are Alabama residents who reside in southwestern Alabama, either in Mobile itself or in towns that are within 40 miles of Mobile, all within the jurisdictional boundaries of the Southern District of Alabama. None of the plaintiffs has any connection with Oregon. Thus, Plaintiffs' contacts are solely with Alabama. Lime is an Oregon

corporation with its headquarters in Oregon, but through agents does business in Alabama. Thus, Lime has contacts with both Oregon and Alabama. Combined, both parties' respective contacts weigh in favor of transfer.

### e. *Contacts relating to the plaintiffs' cause of action in the chosen forum.*

This factor weighs heavily in favor of transfer. None of the events at issue occurred in Oregon. Each of the loans at issue in this case were negotiated, closed, and executed in Alabama. Defendant's loans are secured by security interests recorded in Alabama, and those security interests are in properties located in Alabama. The agents involved in the subject transactions are located either in Alabama or in neighboring Louisiana. The sole contact between Oregon and the Plaintiffs' claims is Lime's presence in Oregon, but Lime's presence in Oregon is neither related nor material to the specific events giving rise to Plaintiffs' TILA claim here. And, although Plaintiffs allege that Lime had a "standard practice" of understating finance charges and using defective Right-to-Cancel notices (Pls.' Complaint 3, 4, 5, 6), which if true might make relevant the case's connection with Oregon, the record is clear that the implementation of this alleged practice occurred in Alabama. It was there that various agents presented each of the Plaintiffs with the allegedly defective notice and gave an allegedly understated finance charge. Overall, the number and importance of the contacts between Plaintiffs' claim and Alabama weighs heavily in favor of transfer.

### f. *Differences in the costs of litigation in the two forums.*

This factor weighs in favor of transfer. Whether this case is litigated in Alabama or Oregon, one side will incur expenses that it would not incur if the case were pending in its home forum simply because there are unavoidable costs associated with pursuing or defending a case in a state different from one's own. For example, one side will be required to retain legal counsel to represent

it in a foreign forum, thus potentially adding a second set of lawyers to that side's litigation efforts. And, one side will be required at times to travel to the foreign forum to participate in or attend depositions, hearings, possible settlement conferences or mediations, and trial. On this aspect of the cost factor, the balance is in equipoise.

This factor tips in favor of transfer because of the cost to arrange the attendance of non-party witnesses. There is no dispute that the Agents were physically present in Alabama, not Oregon, at the time the loans at issue were closed, and there is no serious dispute that those Agents continue to be located in the Alabama-Louisiana area (which fact is further discussed, below). Although Plaintiffs also cite Lime's corporate practices as important evidence in their case and correctly observe that this evidence likely will be obtained in Oregon from Lime's employees, the Agents' testimony is essential to both Plaintiffs' and Lime's respective cases because the agents are contemporaneous witnesses of the events which Plaintiffs have placed in issue. The cost to obtain the agents' presence at deposition and trial will be significantly less if the case is pending in the Southern District of Alabama instead of the District of Oregon. Therefore, this factor supports transfer.

> g.  *Availability of compulsory process to compel attendance of unwilling non-party witnesses.*

This factor weighs in favor of transfer. An important initial observation is the emphasis courts place on this factor when considering motions to transfer venue: "Live testimony is the primary reason courts are concerned about the convenience of witnesses." *Langford*, 2006 WL 1328223, at *9. *See also Kay v. National City Mortgage Co.*, 494 F. Supp. at 852 ("The convenience of witnesses is considered to be of the utmost importance.") Determination of this factor turns on

the Agents, as to whom Lime stresses "some of [its] key witnesses at trial will be the agents who closed Plaintiffs' loans, who were directly responsible for the alleged failures to properly complete the Notices." Defs.' Memo 10.

At oral argument, Lime requested and the court subsequently granted it the opportunity to file supplemental materials presenting evidence of the current location of the Agents. In its December 4, 2008, letter to counsel, the court advised Lime that it should submit affidavits or declarations establishing the location of the witnesses outside the state of Oregon and summarizing, in general terms, what the testimony of the witnesses would be. The court also specifically cautioned that "[t]he affidavits and declarations offered must be non-hearsay and not conclusory," and cited to relevant authority on those points.

Lime's supplemental materials consisted of the declaration of Alisha Bloom, an associate at Goodwin Procter, LLP, one of the firms representing Lime in this case. In the declaration, Bloom summarized her attempts to "verify the current residence and work addresses of these witnesses by using publicly available information and subsequently attempting to contact the witnesses to verify that information." (Bloom Decl. ¶ 3.) Bloom attached to her declaration computer generated reports confirming the Agents' current addresses. Bloom also summarized the type of testimony generally offered by her law firm in TILA, which includes the testimony of the closing agents and/or notaries that attended the closings of the mortgage loans regarding the circumstances surrounding the transactions at issue. She represents that, based on her experience, even if the witness is unable to recall the specific transaction, testimony about the agent's or notary's pattern and practice with regard to the closing of mortgages loans, such as the manner in which lender's closing instructions are carried out and the completion of forms provided to the borrower's at closing, is offered at trial.

Bloom then noted that she was able to verify that the Agents or notaries present at the closing of Plaintiffs' mortgage loans would be able to provide this kind of testimony.

In their response to Lime's supplemental materials, Plaintiffs argue that declaration is based on hearsay and is conclusory. The cases require the moving party to identify the key witnesses to be called and to present a generalized statement of what their testimony would include, and they instruct that the affidavits must not be conclusory or based on hearsay. However, there is little guidance whether the witnesses themselves or some other person are to submit the required affidavits or declarations, and no consistency regarding the evidentiary standard these submissions must meet. For example, in *Forte Capital Partners* the court several times criticized the moving defendants for their failure to offer evidence in support of their motion to transfer, but accepted plaintiff's submission "specifically identif[ying] the expected testimony of seven potential witnesses[.]" 2007 WL 1430052, at *6. In *Langford*, the defendants submitted two affidavits from one of the defendants in which he described various facts about the defendant company and its employees, his discussions with the plaintiff, the plaintiff's business dealings with non-party entities, the actions of non-party witnesses, the contents of various contracts, and the importance of two witnesses whom he identified by name. 2006 WL 1328223, at *4-5. The court's sole criticism of the affidavits is that they failed to inform the court of the expected testimony and its relevance that the two identified witnesses would provide. *Id*. at *9.

Here, Bloom's declaration identifies specific witnesses essential to Lime's defense and contains a sufficient summary of what each witness is expected to say, a submission similar to that plaintiff offered in *Forte Capital Partners*. Furthermore, Bloom's declaration contains a detailed description of her personal search, conducted through publicly available information she attaches

to her declaration, to confirm the current location of these witnesses. As to the attachments, they sufficiently satisfy Federal Rule of Evidence 803(6)'s requirements, because they are the product of government records and Westlaw database information. *See* CHRISTOPER B. MUELLER & LAIRD C. KIRKPATRICK, FEDERAL EVIDENCE 486, 502-03 (2d ed. 1994)(observing that Rule 803(6) "rests in part on notions of trustworthiness" and that the foundational witness need not have personal knowledge of the record-keeping process and "may even rely in part on hearsay").

Plaintiffs argue that because Lime's principal place of business is in Oregon, and its decisions and policies are made here, a corporate representative of Lime would be burdened by having to travel to Alabama to testify. The decisions and policies of Lime are not at issue in this case. In any event, Lime has stated that "in the event a corporate representative needs to testify at trial, Lime would certainly make someone available in Alabama." (Def.'s Reply 13 n.7).

Additionally Plaintiffs argue that because they also are seeking to add Terry, who resides in Oregon, as another plaintiff, the balance of convenience factors shifts to neutral. However, venue is determined as of the time the action is commenced, *Da Cruz v. Princess Cruise Lines, Inc.*, 2000 WL 1585695, at *3 (N.D. Cal. Oct. 12, 2000), and Terry is not currently a named plaintiff. Thus, Terry potential involvement is not pertinent to determination of this factor.

The court finds that, based on the evidence offered by the parties, Lime has failed to meet its burden that the two relevant private factors, the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses, weigh in its favor. On the other hand, Plaintiffs have also failed to show that transfer of this action to the Southern District of Alabama would result in any additional inconvenience or expense to themselves or their witnesses.

/ / / / /

   *h.  Ease of access to sources of proof.*

   This factor is neutral.  Much of the proof will be in the form of documents which can be produced electronically.  A view of the premises is not necessary in this case.  Thus, this factor weighs neither for or against transfer.

   *i.  Other factors.*

   Other factors courts often consider on balance weigh in favor of transfer.  There is no local interest in having localized controversies decided at home, because Plaintiffs brought nationwide class claims.  This is a federal question case, so there is no conflict of law issue that transfer or refusal to transfer will effect.  Given the Alabama locus of the parties' dispute, the unfairness of burdening citizens in an unrelated forum with jury duty weighs in favor of transfer without class certification and becomes neutral if the class is certified.  The courts of the District of Oregon are significantly more congested than the courts of the Southern District of Alabama, which favors transfer.  For the twelve months ending September 30, 2007, the median time from filing to disposition was 10.1 months in the District of Oregon, while it was 7.3 months in the Southern District of Alabama.  Furthermore, the median time from filing to trial was 25 months in the District of Oregon, while only 14.5 months in the Southern District of Alabama.  *See* Federal Court Management Statistics, *available at* http://www.uscourts.gov/cgi-bin/cmsd2007.pl.  Overall, these various factors tip in favor of transfer.

*Conclusion*

   For the reasons stated above, Lime's motion (#14) to transfer venue to the Southern District of Alabama is GRANTED and this case is hereby transferred to the United States District Court for the Southern District of Alabama.  Plaintiffs' motion to amend their complaint is DENIED as moot

with leave to refile in the Southern District of Alabama.

IT IS SO ORDERED.

DATED this 15th day of January, 2009.

JOHN V. ACOSTA
United States Magistrate Judge